MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*April 7—May 1, 1923.*

*Workmen's compensation: Amputation of arm: Successive amputations: Date from which permanent disability is computed.*

Where the arm of an injured employee was amputated just below the elbow, and some months thereafter was again amputated just above the elbow, the employee was entitled to a weekly indemnity until the time of the second amputation and to compensation for permanent disability computed from the date of the second amputation and not from that of the first, under sub. (5) (a), sec. 2394—9, Stats. 1921, specifying the period for which an employee is to receive compensation in the event of "the loss of an arm at the elbow," although the liability for permanent disability was under the same schedule as to both amputations.

APPEAL from a judgment of the circuit court for Dane county: GEORGE THOMPSON, Judge. *Affirmed.*

Action to review an order of the *Industrial·Commission* granting compensation to the defendant *Max Schelong,* whose arm was injured December 20, 1920, while in the em-. ploy of the plaintiff. Amputation became necessary, and on December 31st his arm was amputated two inches below the elbow. The wound became infected and was treated by a doctor until June 24, 1921, when a second amputation became necessary and the arm was on that date amputated just above the elbow. He was able to return to work August 3, 1921. The *Commission* allowed him a weekly indemnity up to the time of the second amputation, and in addition the compensation provided for in sub. (5) (a), sec. 2394—9, Stats. Plaintiff claims he should have been allowed a weekly indemnity up to the time of the first amputation and in addition the compensation provided for in said section. The difference in the weekly indemnity from December 31, 1920, to June 24, 1921, in this case amounted to $368.31. The circuit court affirmed the award and the plaintiff appealed.

For the appellant there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke,* and oral argument by *John L. Newman,* all of Milwaukee.

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mortimer Levitan,* assistant attorney general.

VINJE, C. J. Sub. (5) (a), sec. 2394—9, Stats. 1921, provides:

"In cases included by the following schedule, the compensation to be paid for healing period and permanent disability, computed from the date of amputation or enucleation, as the case may be, subject to the provisions of this act for maximum and minimum payments, shall be sixty-five per cent. of the average weekly earnings of the employee

for the periods named in the following schedule, to wit:
. . . The loss of an arm at the elbow, two hundred eighty
weeks."

In the present case there were two amputations, and the
question is from the date of which does the sixty-five per
cent. of 280 weeks begin to run? It is clear that the statute
allows a weekly indemnity up to the time of the amputation
mentioned in the statute. Where there is more than one
amputation, is it the first one that takes place or the last
one? It is clear that no intermediate amputation is meant
where there are more than two, but it is not so clear whether
the first or last amputation is meant. Plaintiff argued that
it is the first because that is the natural inference from the
language used, and that is the amputation that severs the
arm or limb from the body and is the amputation meant by
the statute. There is much force to this reasoning, re-
enforced as it is by the argument that, as in this case, a
second amputation was but another method of healing the
wound; that it might have been cured by antiseptic treat-
ment, and that might have taken just as long.

There are, however, other considerations that lead us to
the conclusion that the statute means the last amputation.
They are these: It frequently happens that a finger, for
instance, needs amputation, and then it is found later that,
due to serious infection or otherwise, the hand must go, and
later still, perhaps the arm. Now, it cannot be seriously
doubted that in such case the amputation that measures the
liability for permanent disability under the statutory sched-
ule is meant, and that is the last amputation. It is true in
this case that the liability for permanent disability was under
the same schedule as to both amputations, one was just be-
low and the other just above the elbow, but the construction
adopted makes the term "amputation" mean the same in each
case, no matter how many have occurred and no matter
whether there has been a change in the schedule under which

it comes—namely, the last amputation.   It is also reasonable to suppose that the legislature intended the period of permanent disability for which compensation is allowed to begin at the time the amputations end where there is more than one, for it is the last amputation that measures the extent of liability, and we think that was the amputation the legislature had in mind.   The fact that in this case the liability for permanent disability remains the same does not take it out of the general or uniform rule of construction adopted as to what amputation the statute means.

*By the Court.*—Judgment affirmed, with costs to the respondents.